UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ROBERT PETHERS,

      Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

Case No. 1:12-cv-678

Honorable Joseph G. Scoville

**OPINION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On August 15, 2005, plaintiff filed his applications for benefits alleging a January 1, 2003 onset of disability.[1] (A.R. 190-94, 772-74). Plaintiff's disability insured status expired on September 30, 2007. Thus, it was plaintiff's burden on his claim for DIB benefits to submit evidence demonstrating that he was disabled on or before September 30, 2007. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

---

[1] Administrative *res judicata* stemming from the denial of an earlier claim barred any onset of disability before April 14, 2004. (A.R. 31-39). Further, SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, September 2005 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff's claims for DIB and SSI benefits were denied on initial review. On August 25, 2008, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. On October 21, 2008, the ALJ issued a partially favorable decision finding that plaintiff was disabled on and after January 1, 2007, but he was not disabled at any time between January 1, 2003, and December 31, 2006. (A.R. 76-87). The Appeals Council granted plaintiff's request for review. On July 30, 2010, the Appeals Council held that administrative *res judicata* barred any claim by plaintiff asserting an onset of disability before April 14, 2004. (A.R. 92). The Appeals Council "vacate[d] the ALJ's entire hearing decision and remand[ed] the case for further proceedings." (A.R. 92). On January 13, 2011, plaintiff received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (A.R. 805-70). On March 29, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-26). The Appeals Council denied review on May 22, 2012 (A.R. 6-8), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 15). Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ "wrongly concluded that *res judicata* required him to adopt the portion of the 2004 decision concerning Plaintiff's physical limitations[;]" and

2. "Substantial evidence does not support the weight given to Dr. Greenbaum's opinions."

(Plf. Brief at 1, docket # 16). The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he

Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from his alleged onset of disability through September 30, 2007, but not thereafter. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after his alleged onset of disability. (A.R. 18). Plaintiff had the following severe impairments: status-post 1996 kidney transplant, an anxiety disorder with post-traumatic stress disorder (PTSD) features, a dysthymic disorder, and a personality disorder with mixed features. (A.R. 19). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work limited to lifting or carrying 20 pounds occasionally and 10 pounds frequently. He can sit for up to 6 hours, stand for up to 6 hours, and or walk up to 6 hours in an 8-hour workday. He must avoid jobs that require advanced reading comprehension skills. He can perform simple, routine tasks and maintain his attention and concentration for up to 2-hour blocks of time accommodated by normal breaks and meal periods. There can be no exposure to the general public and only occasional exposure to co-workers and supervisors, but there can be no close, critical supervision. He must be in a low stress, structured work setting. He would be anticipated to miss 1-2 days of work each month due to symptoms.

(A.R. 21). The ALJ found that plaintiff's subjective complaints were not fully credible. (A.R. 21-24). Plaintiff was unable to perform his past relevant work. (A.R. 24). Plaintiff was 39-years-old

-4-

as of the date of his alleged onset of disability, 44-years-old when his disability insured status expired, and 47-years-old on the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 24). Plaintiff has a limited education and is able to communicate in English. (A.R. 24). The transferability of job skills was not an issue because all plaintiff's past relevant work was unskilled. (A.R. 25). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 33,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 863-69). The ALJ found that this constituted a significant number of jobs. Using Rule 202.17 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 25-26).

**1.**

Plaintiff argues that the ALJ committed error in adopting the physical residual functional capacity (RFC) findings made in the administrative decision entered on April 13, 2004. (Plf. Brief at 13-17; Reply Brief at 1-3, docket # 18). In 2004, an ALJ found that plaintiff retained the RFC to perform a limited range of light work. (A.R. 35-36). Under the rule of *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), and its progeny, the ALJ was required to "adopt and be bound by the finding of [the] claimant's residual functional capacity or other findings required at a step of the sequential evaluation process." *Caudill v. Commissioner*, 424 F. App'x 510, 514 (6th Cir. 2011); *see Miller v. Commissioner*, No. 12-3644, 2013 WL 1705026, at * 1 (6th Cir. Apr. 22, 2013); *Haun v. Commissioner*, 107 F. App'x 462, 464 (6th Cir. 2004). The ALJ could not "redetermine the findings of a claimant's residual functional capacity or other issues previously

determined in the absence of new and additional material evidence or changed circumstances." *Caudill*, 424 F. App'x at 514. The ALJ considered all the evidence regarding medical care that plaintiff had received after April 13, 2004. The ALJ found that "[n]o significant change in the claimant's physical condition [was] supported by the evidence of record, so that portion of the prior residual functional capacity [was] affirmed in its entirety." (A.R. 21). "[C]hanges in the mental functional limitations [in the RFC] were made based on [] more recent evidence." (A.R. 21).

Plaintiff argues that the ALJ "wrongly applied *Drummond*" when he indicated that the findings on the exertional component of the RFC were binding because "*Drummond* does not require the ALJ to parse out functional elementals from a prior RFC determination . . . ." (Plf. Brief at 15). Plaintiff cites no legal authority in support of his argument that *Drummond* established an "all or nothing" rule applicable to an earlier RFC finding. If the Sixth Circuit had intended such a narrow interpretation of its *Drummond* decision, it would have undoubtedly said so sometime during the last sixteen years. Under plaintiff's interpretation, the *Drummond* rule could easily be bypassed through small modifications in the RFC, which would allow the ALJ to make new factual findings unrestricted by the earlier decision. For example, a minor alteration in an RFC based on a change in functional limitations stemming from a mental impairment such as depression would allow the ALJ to make an entirely different finding regarding the exertional component of the claimant's RFC without any new evidence related to a physical impairment. This would be utterly inconsistent with the Sixth Circuit's emphasis in *Drummond* that "[j]ust as a social security claimant is barred from relitigating an issue that has previously been determined, so is the Commissioner." 126 F.3d at 842.

In addition, the ALJ's analysis in this case was consistent with the analytical approach the Sixth Circuit utilized in its most recent decision applying the *Drummond* rule. In *Rudd v.*

*Commissioner*, No. 12-6136, 2013 WL 4767020, at * 6 (6th Cir. Sept. 5, 2013), the Sixth Circuit first considered the evidence regarding the changes in the physical component of the claimant's RFC and found that "the record support[ed] the ALJ's conclusion that [the claimant's] physical RFC [had] improved since the 2007 decision." *Id.* The Court of Appeals then considered the evidence regarding changes in the claimant's mental impairments and held that "substantial evidence support[ed] the ALJ's finding that [the claimant's] mental condition had changed such that the prior mental RFC was not binding." *Id.* This court finds no error in the ALJ's application of the *Drummond* rule.

Plaintiff makes a related argument that there was evidence from which the ALJ could have made a RFC finding which included more significant physical restrictions. (Plf. Brief at 15-16). Plaintiff's burden on appeal is much higher than identifying evidence on which the ALJ could have based a finding in his favor. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ. *Jones v. Commissioner*, 336 F.3d at 477. There is more than substantial evidence supporting the ALJ's factual findings that plaintiff had no significant change in the physical component of his RFC and that he retained the RFC for a limited range of light work. (A.R. 22-23).

**2.**

Plaintiff argues that the ALJ violated the treating physician rule in the weight he gave to the opinions of Psychologist Irwin Greenbaum. (Plf. Brief at 17-19; Reply Brief at 3-4). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The ALJ found that Psychologist Greenbaum's opinions[2] were entitled to little weight:

> Other than the very limited treatment notes of Dr. Greenbaum (Exhibit B12F) and multiple statements under oath from Dr. Greenbaum, there is no psychological treatment after 2005. The claimant did receive some treatment in 2005 at Pine Rest (Exhibit B9F). He was diagnosed with depressive and anxiety disorders, Janna Boes, LMSW, concluded in October 2005 that the claimant's Global Assessment of Function score (GAF) was 45, but Dr. Carlos Marcano, M.D., concluded the next month that the GAF was 53 (Exhibit B9F/9). While still significant, this does not equate to the severe inability to function described by the claimant. A consultative examiner, Wayne Kinzie, questioned in 2005 whether the claimant had borderline intellectual function, but this was just a guess, not a diagnosis, and no testing confirmed it (Exhibit B4F). Dr. Greenbaum suggested the same thing, but again with no supportive evidence. Claimant's current claims of illiteracy are contradicted by Dr. Greenbaum, who indicated that the claimant appeared capable of understanding the MMPI (B16F/10) and also at Exhibit B1E/6-7 where he confirms that he can read/understand English and denied receiving special education classes. This is consistent with the evidence provided in the prior hearing at Exhibit B1B/9.
>
> The claimant relies heavily on the treatment notes and opinions of Dr. Greenbaum. It should first be noted that the treatment notes are not particularly detailed or informative. Dr. Greenbaum conceded that his notes are not meant to support his diagnosis, but only serve as a device to jog his memory when providing counseling (Exhibit B17F/4). Instead of basing his opinion on the information in those notes, or even information gleaned during official therapy sessions, support for Dr. Greenbaum's ultimate conclusion of total psychological disability (Exhibits B10F; B11F) was based on his recollections of these sessions and subsequent "informal" sessions. These other sessions occurred when the claimant would call him up or they would accidentally meet out in public (Exhibit B17F/5). Rather belatedly, Dr. Greenbaum performed more formal testing of the claimant in 2011 (Exhibit B18F). The doctor felt that testing confirmed his opinion that the claimant is completely disabled.

---

[2]Psychologist Greenbaum's professional contact with plaintiff was extremely limited. He saw plaintiff for four counseling sessions in 2006, one or two sessions in 2008, and one session in January 2011. (A.R. 433, 453-54, 589-605). The ALJ gave plaintiff the benefit of a doubt when he treated Greenbaum's opinions as those of a treating psychologist. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006).

> Little weight is given to Dr. Greenbaum's conclusions. He treated the claimant formally for about four visits in 2006 (Exhibit B12F). He stated in January 2008, that these four visits, plus occasional contacts thereafter, convinced him that the claimant was disabled based on a depressive disorder (Exhibit B10F). He also concluded that this was the case since 1999 (Exhibit B11F), some six or seven years prior to any evaluation. One wonders how the doctor could have had many meaningful visits with the claimant during casual public contact when the claimant was allegedly housebound most of the time. It is also a concern that the doctor felt that some of the psychological disability was due to severe pain (Exhibit B10F/15), affirmed in a later statement (Exhibit B17F/6), even though the claimant was rarely voicing complaints of anything more than intermittent pain. In addition, one of the more persuasive elements in the clinical picture in Dr. Greenbaum's mind was the traumatic experience of the fire (Exhibit B16F) – a history the doctor did not have when he first disabled the claimant and which is not mentioned elsewhere. It appears Dr. Greenbaum worked backwards from the claimant's statements of disability, finding a basis for that conclusion, rather than taking the history and any corroborating evidence and working forward to a diagnosis.
>
> Finally, in spite of Dr. Greenbaum being persuaded by the claimant's history to him of past trauma and current severe symptoms, most of the treating doctors, including the primary care doctor, never noted any severe depressive symptoms or took a history of the claimant being unable or unwilling to leave his home. The closest history is that in the Pine Rest records, where the last treatment note, of May 2006, noted the claimant was "pleasant," with a congruent mood and appropriate affect (Exhibit B9F/15). In spite of the claimant's statement in his September 2005 functional self-assessment describing delusions (Exhibit B2E/2, 8), Dr. Marcano of Pine Rest reported he denied any hallucinations or psychotic symptoms (Exhibit B9F/15). The rather benign mental status exam findings noted by then-treating psychiatrist Dr. Marcano are widely inconsistent with the drastic mental limitations articulated by Dr. Greenbaum at Exhibits B11F and B18F. Of further significance are the facts that the claimant has had no continuing psychiatric care or counseling since his contact with Dr. Greenbaum in November 2006, that his medical evidence of record since that time is relatively devoid of psychologic complaints (note Exhibits B14F/28, 30-31; B21F/3, 7, 11, 15, 17, 19) and that he has rarely been on any psychotropic medication since November 2006.

(A.R. 23-24). The ALJ found that the opinions of plaintiff's treating psychiatrist, Dr. Carlos Marcano, M.D. (A.R. 422-24, 427-28), were more persuasive and consistent with the evidence presented. He found that the opinions of Psychologist Jeffrey Andert, a medical expert who testified at plaintiff's hearing (A.R. 187, 827-45), were entitled to considerable weight because he "had the benefit of a review of the full psychological treatment record" and his conclusions were "very

consistent with that evidence." (A.R. 24). Psychologist Greenbaum's opinions were not well supported by objective evidence. His progress notes did not support the extreme restrictions he suggested in his statements to plaintiff's attorney. (*Compare* A.R. 453-54 *with* A.R. 429-50, 565-79, 583-87). The court finds no violation of the treating physician rule.

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated: September 30, 2013  /s/ Joseph G. Scoville
United States Magistrate Judge